<div style="text-align:right">1813.<br>Kennedy<br>vs<br>Insurance Comp'y</div>

JUDGMENT AFFIRMED.

## KENNEDY vs. THE BALTIMORE INSURANCE COMPANY. DECEMBER.

APPEAL from *Baltimore* County Court. *Assumpsit.* The declaration contained a count for money had and received, and the other money counts. The general issue was pleaded. At the trial the plaintiff, (the appellant,) gave in evidence, that he was the owner of the ship called *The Arethusa,* which he had caused to be insured by the defendants (the appellees,) on a voyage from the Island of *St. Domingo* to the port of *Baltimore;* and that in the prosecution of the voyage, the ship was captured by a *British* vessel of war, and carried into the Island of *Bermuda,* where on her arrival she was, together with her cargo, libelled in the vice admiralty court there established, as prize of war. That further proceedings thereon took place, until the sentence of the said court was pronounced, which liberated the vessel, but condemned the cargo as lawful prize. That an appeal was interposed from the said sentence to the high court of appeals in *Great Britain,* by the captors, so far as regarded the restoration of the vessel, and on behalf of the claimants of the cargo, so far as the said sentence regarded the condemnation of the cargo. That the said appeals were regularly prosecuted before the said high court of appeals, and the sentence, in relation of the vessel, was affirmed, and freight ordered to be paid by the claimants of the cargo; and that the sentence of condemnation of the cargo was reversed, and the same ordered to be restored to the claimants. That *Anthony Mangin* of the city of *London,* merchant, acted as the agent of the defendants, in attending to the prosecution of appeals before the high court of appeals in *England,* and in receiv-

<div style="font-size:smaller">K the owner of a vessel, caused her to be insured by B and C, on a voyage from S to L. In the prosecution of her voyage she was captured and carried into a British port, where the cargo was condemned, but the vessel was liberated. On an appeal the sentence in relation to the vessel, was affirmed, and freight ordered to be paid by the claimants of the cargo; and the sentence of condemnation of the cargo was reversed, and the cargo ordered to be restored to the claimants. D, the agent of B and C, received from the claimants of the cargo the amount of the freight awarded. Immediately after the capture, K abandoned the vessel to B and C, and claimed as for a total loss, which was paid to him. He also claimed the amount of the freight received by the agent of B and C; and in an action of assumpsit for money had and received, brought by him against B and C, being a corporate body—Held, that the action can be maintained, and that K is entitled to all freight earned to the time of the capture; but not after the capture and after the cap-</div>

<div style="font-size:smaller">ture, is susceptible of apportionment, so as to give to each of the parties the usufruct of the ship during the time of their respective ownership.

In general a corporate body cannot act but by its seal; but that doctrine cannot be extended so far as to prevent their liability from the nature of their institution, or for acts done necessarily or incidentally arising from an authority delegated to their agent.

The action for money had and received is an equitable action, and the plaintiff, in support of it, can resort to and prove all equitable circumstances incident to his case; and where money was received by an agent of a corporation, an assumpsit in law was created by the corporation in receiving the money through their agent.</div>

ing whatever sums of money might be awarded to them in virtue of the decrees or orders of the said court. That the said *Mangin* received from the claimants of the said cargo the sum of £1230, sterling money, being the amount of freight awarded in manner aforesaid. He further gave in evidence, that immediately after hearing of the capture of the ship *Arethusa*, he abandoned the said ship to the defendants, and claimed as for a total loss, and was paid accordingly. The defendants then moved the court to direct the jury, that the plaintiff under this evidence could not maintain an action of *indebitatus assumpsit* against the defendants as a corporation. This direction the court, [*Nicholson*, Ch. J.] gave. The plaintiff excepted; and the verdict and judgment being for the defendants, he appealed to this court.

The cause was argued before CHASE, Ch. J. and BUCHANAN, EARLE, and JOHNSON, J.

*Harper*, for the Appellant, contended, 1. That a corporation could be sued in an action of *assumpsit*. 2. That an abandonment of the vessel insured, was not an abandonment of the freight.

On the *first point* he cited *The Bank of Columbia vs. Patterson's Adm'r.* 7 *Cranch*, 299; and *Caze & Richaud vs. The Baltimore Insurance Company, Ibid* 358.

On the *second point*—*Marsh.* 604; and *The United Insurance Company vs. Lenox*, 1 *Johns. Ca.* 377.

*W. Dorsey*, for the Appellees, contended, 1. That an action of *indebitatus assumpsit* would not lie against a corporate body. 2. That upon the prayer made to the court below, the plaintiff had no right to complain of the direction given to the jury. 3. That if the defendants had received the money, they had a right to retain it.

On the *first point*, he insisted that the action would not lie, because the money was not received by the defendants; and that even if it had been so received, the action could not be maintained, because, if wrongfully received, it was not within the scope of the act of incorporation of 1795, *ch.* 59. That the company had no authority to receive money belonging to third persons; and for money wrongfully received the corporation was not liable. He referred to 1 *Blk. Com.* 502. 1 *Bac. Ab.* tit. *Corporations.* 6 *Bac. Ab. (Kidd's* Suppl.) 267. *Taylor vs. Dulwick Hospital*,

1 *P. Wms.* 656, 657. *Breckbill vs Turnpike Company,*
5 *Dall. Rep.* 496; and 1 *Chitty's Plead.* 97.

On the *third point,* he cited 2 *Marsh.* 601, 602, 604,
620, *(note.)* *Thompson vs. Rowcroft,* 4 *East,* 34. *Leathum vs. Terry,* 3 *Bos. & Pull.* 479. *M'Carthy vs. Abel,*
5 *East,* 388. *Park,* 227. *United Insurance Company
vs. Lenox,* 1 *Johns. Ca.* 577.

CHASE, Ch. J. delivered the opinion of the court: The
question to be decided in this case by the court is, Whether an action for money had and received can be maintained by the appellant against the appellees, for money
had and received by their agent for freight received for
goods shipped in *The Arethusa,* from the complainants?

In determining this question, the court are necessarily
drawn into a consideration of the right the appellant has
to the freight, and the extent of that right on the facts
stated. What effect has the abandonment of the ship for a
total loss produced? According to the opinion of the court,
the abandonment of the ship for a total loss on account of
the capture, did, by operation of law, transfer all the right
and interest of the appellant in the ship to the appellees,
on their acceptance of the abandonment, and all the benefits and advantages, directly or incidentally accruing from
the ship subsequent to the capture.

The abandonment for a total loss has a retrospective relation to the cause of the abandonment, and in this case,
to the capture of the ship. At that time all the right and
interest of the appellant, the insured, in the ship ceased,
and the right and interest of the insurers commenced.
The assured, by his abandonment, had made his election
to take that which was substituted by mutual consent as
an equivalent for the ship, and the insurers, by their acceptance, gave their assent to it. What were the respective rights of the assured and insurers at this time as to
the freight of the ship? If the freight is susceptible of apportionment, and in our judgment it is, and may be apportioned in such manner as will do justice to both parties,
by giving to each the usufruct of the ship during the time
of their respective ownership—the proportion of each in
this case, to be ascertained according to existing circumstances. The principle of apportionment in this case, and
those similarly circumstanced, is founded in equity. The

1813.

Kennedy
vs
Insurance Comp'y

contingency which produced the abandonment cannot be attributed to either party, and the result ought not to be more unfavourable to one than the other. But if this principle is rejected on the ground that there is no criterion by which the apportionment can be made, then the insurers would not be burthened with the loss against which they insured; but by receiving the whole of the freight might be compensated for it, or at any rate their loss would be very much diminished at the expense of the assured.

The court are of opinion, that the appellant is entitled to all the emoluments or earnings of the ship anterior to the capture, to be adjusted by a jury on such evidence as is legally admissible before them.

The position is not to be controverted, that generally a corporate body cannot act but by its seal; but this position cannot be extended so far as to prevent their liability from the nature of their institution, or for acts done, necessarily or incidentally arising from an authority delegated by such body to their agent legally appointed. If it was otherwise, and the agent did acts, or received money, within the scope of the delegated authority, and became insolvent, the party transacting business with them would be without remedy in law or equity.

In this case it is stated, that *Anthony Mangin* acted as the agent of the appellees in attending to the prosecution of the appeals in *England*, and in receiving money awarded to them in virtue of orders or decrees of the high court of appeals; and it is also stated, that *Mangin* received £1230 sterling money for freight in this case.

The action for money had and received is an equitable action, and the plaintiff, in support of it, can resort to and prove all equitable circumstances incident to his case. And the court are of opinion, that an assumption in law was created by the appellees in receiving the money through the agency of *Mangin;* and that the appellant is entitled to all the earnings and emoluments of the ship which had accrued prior to the capture.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.