(Decided 20th February, 1874.)

## Samuel S. Blair *vs.* Laura V. Blair, widow of John Blair.

*Bills of Exception—Prayer defective as being too General.*

At the trial of an action for money had and received, the plaintiff to support the issue on his part, proceeded to read in evidence certain testimony taken under a commission, as also exhibits attached thereto. The defendant objected to the admissibility of the exhibits as evidence. The Court overruled the objection and they were admitted in evidence. The defendant thereupon excepted. The bills of exception transmitted to the Court of Appeals did not embody the evidence taken under the commission, nor the exhibits attached thereto; but the same were set out in the transcript of the record, and there was no averment that they were not the same referred to in the exceptions. Held :

That there was a sufficient identification of the evidence to support the exceptions, and they were properly subject to review.

A prayer "that upon the proof offered in the case, the plaintiff is not entitled to recover," is too general, and should not be granted.

Appeal from the Circuit Court for Howard County.

John Blair on the 13th of October, 1870, became a member of the United States Railroad Conductors' Life

Insurance Company, a voluntary association, the object of which was to provide for the widows and children, heirs or representatives of its members when they died. In November, following, John Blair died, and the sum of $3275, was assessed upon the members of the Company, to be paid to his widow, he having died intestate. Of this assessment the sum of $3249 was collected; and upon the representation of Harry S. Nones, the Secretary of the Baltimore Division, and Samuel S. Blair, a brother of the deceased, it was paid over to the said Samuel S. Blair, who subsequently offered to pay one-third thereof to the widow of his deceased brother; she declined to receive it and instituted this suit against him in the Court of Common Pleas, to recover the whole amount. At his suggestion the case was removed for trial to Howard County.

*First Exception.*—At the trial of this cause the plaintiff, to sustain the issue joined on her part, proceeded to read in evidence the testimony of Joseph T. Culbertson, taken under a commission in Columbus, Ohio, and when about to read the answer to the second interrogatory, the defendant objected to the admissibility as evidence of the papers marked "Exhibit B" and "Exhibit C." The plaintiff assented to the exclusion of "Exhibit C," and the Court overruled the objection to "Exhibit B;" to this ruling the defendant excepted.

*Second Exception.*—The plaintiff then proceeded to read said testimony, and being about to read a paper thereto annexed, marked "Exhibit A," the defendant objected to the same as inadmissible, but the Court overruled the objection and admitted the paper to be read; to this ruling the defendant excepted.

*Third Exception*—The plaintiff continued to read said testimony, and being about to read the answer to the fourth interrogatory, the defendant objected to the admissibility of the same, and the Court sustained the objection in part, but admitted a part of said answer to be read,

being the part not enclosed in brackets, and also the paper attached thereto, marked "Exhibit E;" which Exhibit E was admitted by the Court for the purpose of showing the representations which induced the Company to pay the money in question to S. S. Blair, and not for the purpose of proving any declarations of said Blair. To the admission of which by the Court the defendant excepted.

*Fourth Exception.*—The defendant then excepted to the admissibility of the sixth answer of the witness in said testimony, but the Court overruled the objection and admitted the part not enclosed in brackets to be read. To this ruling of the Court the defendant excepted.

*Fifth Exception.*—The defendant then objected to the admissibility of the paper annexed to said commission, marked "Exhibit G," but the Court overruled the objection. To this action of the Court the defendant excepted.

*Sixth Exception.*—The defendant, to sustain the issue on his part, proposed to ask Samuel S. Blair, the defendant, the question: "State whether you made any special arrangement with the Railroad Conductors' Life Insurance Company of the United States and Canadas, with reference to the insurance by that Company of the life of John Blair; and if so, state what it was?" Being required to state the purpose of the question by the Court, the counsel stated that the purpose of the question was to show that in September, or 1st of October, 1870, the defendant applied to the agent of the Company spoken of in the question, to insure the life of his brother John Blair for his special benefit, and that after some delay, the arrangement was made as requested by the defendant, and the special arrangement was made with the Secretary of the Baltimore Division of said Company, acting for the Company, by which the said Company agreed to insure the life of said John Blair for the special benefit of the defendant, and the defendant then paid to said Secretary, as agent of said Company, the sum necessary to

perfect said arrangement.   To the submitting and an-
swering of which question the plaintiff objected and the
Court sustained the objection and refused to allow the
question to be put to the witness.   To this ruling of the
Court the defendant excepted.

*Seventh Exception.*—The defendant was then shown the
paper filed, marked "Exhibit D," and testified : " I
signed that paper." He was then asked, "State in
what capacity you received the money specified in that
receipt, and all that passed at the time of signing it."
The question was objected to, and the counsel for the de-
fendant being required to state the object of the question
stated.   "The question is designed to give the witness an
opportunity to explain the receipt, and to show that he
did not receive the money as administrator, or claim to
do so, and that he explained his position to the agent of
the Company at the time of signing the receipt, viz : that
he was not receiving the money as administrator of John
Blair, but in his own right, pursuant to a special arrange-
ment made with the agent of the Company, and that the
same was paid to him and received by him with a full
understanding on the part of said agent, of the capacity
in which it was demanded and received by him."   And
the defendant then offered to give evidence by several
witnesses to prove, that at the signing of the receipt
given in evidence by the plaintiff, the defendant objected
to signing said receipt, with the clause, "Administrator
of the estate of John Blair," embodied therein, but was
told by the agent of said Insurance Company that it was
matter of form, and that was the form in which said
Company wanted its receipts.   [That the Company fully
understood the money about to be paid to Samuel S.
Blair, was claimed by and was to be paid to him in his
own right, and upon the said representation made to him
by the agent of the Company, he signed the said receipts.]
The defendant offered in evidence that the said S. S.

Blair did not notify Harry S. Nones, as 'alleged in Exhibit E; defendant further offered to prove that he applied to Harry S. Nones, as Secretary, &c., of said Company, in September, 1870, for an insurance by said Company, of the life of John Blair, for his, defendant's special benefit, and after consultation with the officers of said Company, the said Nones notified him of their acceptance of his said application for his special benefit, and not otherwise. That said defendant then and before the adoption of the Constitution and By-Laws offered in evidence, and marked "Exhibit B," paid, and the said Company received, the tax or assessment necessary to secure said insurance, and from the time of said payment to the death of said John Blair, paid all and every of the assessments and taxes upon said insurance, and offered the receipts signed by said Harry S. Nones to prove said payments. The defendant further offered to prove that this transpired without the knowledge of said John Blair, until the fact was subsequently made known to said John by the defendant. Defendant further offered to prove that after the death of said John Blair, he claimed the money due to himself under said arrangement, and received the same in accordance with said special arrangement.

The plaintiff objected to the entire offer of evidence made by the defendant, unless he proposed to follow it up by evidence showing that Harry S. Nones was authorized by the Railroad Conductors' Life Insurance Company to make the arrangement with the defendant contained in said offer; and unless he proposed further to follow it up by evidence showing that the $3249, mentioned in the receipt offered in evidence by the plaintiff, was paid by the individual members of said Company for the purpose of being paid to Samuel S. Blair, under the alleged arrangement; and even if the defendant proposed to so follow up said offer with the evidence above mentioned, the plaintiff objected specifically to the proposed proof of the declarations of Nones to said Blair, as are contained in the brackets.

This objection was sustained by the Court, and the defendant excepted.

*Eighth Exception.*—The defendant prayed the Court to instruct the jury, that upon the proof offered in this case, the plaintiff is not entitled to recover.

This prayer the Court (HAMMOND and HAYDEN, J.) refused to give and the defendant excepted.

The verdict and judgment being for the plaintiff, the defendant appealed.

*Exhibit A,* referred to in the evidence, was a certificate dated Columbus, Ohio, Oct. 13th, 1870, that John Blair was a member of the United States Railroad Conductors' Life Insurance Company.

*Exhibit B,* was a copy of the revised Constitution of the United States Railroad Conductors' Life Insurance Company, adopted October, 1870. Article 9 of the revised By-Laws of the Company, provided that the premium to be paid in case of the death of any member of the company, might be disposed of by his last will and testament, otherwise it should belong to and be paid to his widow.

·*Exhibit C,* was excluded as evidence, with the assent of the plaintiff.

*Exhibit D,* was a paper executed by S. S. Blair, in which he acknowledged the receipt from the United States Railroad Conductors' Life Insurance Company of $3,249 premium on account of the death of John Blair, a member of said company. In the body of the receipt, S. S. Blair was described as administrator of the estate of the late John Blair, a conductor on the Northern Central Railroad.

*Exhibit E,* was a letter from Mr. Harry S. Nones, local secretary of the Life Insurance Company, dated 20th January, 1871, addressed to Mr. E. M. Livingston, the Grand Secretary and Treasurer of the Company, in which it was stated that S. S. Blair, the brother of the deceased John Blair, was authorized to settle the claim, and that he had notified the writer that Mrs. Blair had given him, (S. S. Blair,) power to receive the money due her husband.

*Exhibit F*, was a letter dated 11th May, 1872, from Mrs. John Blair, the widow, to Mr. J. W. Moore, a member of the Executive Committee of the Conductors' Life Insurance Company, in which the writer stated that the money which had been collected at the death of her husband, had been paid without consulting her, to Samuel S. Blair, who had offered to give her one-third of the amount if she would be satisfied, which she had declined, &c.

*Exhibit G*, was the copy of an assessment circular sent out on the occasion of the death of John Blair, stating the amount of the premium to be paid, and requesting the person to whom the circular was addressed, to send the sum of one dollar for each member on his road or division, to the President of the Railroad Conductors' Insurance Company. The part of the answer to the fourth interrogatory propounded to the witness Culbertson, and referred to in the third exception, and which was admitted in evidence by the Court, was as follows: "I have no knowledge to whom said money (being the $3,249) was actually paid, other than as I derive it from a receipt therefor which I find among the papers and vouchers for such payments in my office, belonging to the Company, which I now produce and file with the Commissioner, and which is by him attached hereto, marked "Exhibit D." As appears from that receipt, said money was paid to Samuel S. Blair, administrator of the late John Blair. I am not acquainted with the signature thereto, "S. S. Blair," and cannot speak as to its genuineness. I also find among the letter files of the Company, in my office, a letter addressed to E. M. Livingston, then Secretary of the Company, dated January 20th, 1871, signed "Harry S. Nones, Secretary," relating to said payment, which I also produce and file with the Commissioner, and which is by him attached hereto, marked "Exhibit E." The signature thereto is the genuine signature of the said

Harry S. Nones above mentioned, as the then Local Secretary of said Company, for Baltimore Division of Northern Central Railway."

The part of the answer of the witness Culbertson to the sixth interrogatory, admitted by the Court as evidence, and to which the fourth exception was taken, was as follows: "No other contract was ever entered into by the Railroad Contractors' Life Insurance Company with John Blair, or with any one on his behalf, other than the one evidenced by the paper marked "Exhibit A," hereto attached, so far as I know or can ascertain, and I say this because I neither know nor have ever heard of, nor can I find any mention of any other contract on the books, or among the files, papers or records of the company in my office. (The witness was the Grand Secretary and Treasurer of the Company.)

The cause was argued before BARTOL. C. J., STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.

*Henry Stockbridge,* for the appellant.

The Court erred in allowing the papers designated in the first, second, third and fifth bills of exception to be read to the jury and to be received as evidence. They were *res inter alios acta,* and of no authority as to the defendant. They might tend to show a good claim on the part of the plaintiff against the Railroad Conductors' Life Insurance Company, but it was not shown nor attempted to be shown that the defendant was any party to those papers, or had any knowledge of their existence.

They were inadmissible also and should have been excluded on other equally familiar grounds. "Exhibit E," for example, is a statement, not under oath or tested by cross-examination, of a competent and accessible witness, whose statements can properly be made to bind the defendant when, and only when, presented in legal form

and subjected to the proper sanctions and tests. The same is true of Exhibits A and G.

It was also error on the part of the Court to admit as evidence the sixth answer of the witness Culbertson. He had no connection with the Company of whose proceedings he undertakes to speak, till long after the date of the occurrences of which he speaks. He does not profess to have any personal knowledge of the matters whereof he speaks, or to find any record of them; but infers the facts from the absence from his office of papers showing the contrary. No proper foundation had been laid for the admission of the witness' inferences; and as the case then stood, the plaintiff was bound to prove the facts there alleged by Culbertson, if at all, by those who were the officers of the Company at the time, or by producing the books of the Company, or properly authenticated transcripts from them.

The exclusion of the evidence offered by the appellant and embodied in his sixth and seventh exceptions, was improper. The plaintiff was claiming that the defendant had collected and received for the plaintiff's use a certain sum of money from the U. S. Railroad Conductors' Life Ins. Co. and that she was entitled to recover it, and she had offered evidence which had been received that no other obligation had ever been incurred by said Insurance Company in connection with John Blair, save that growing out of the relation which is certified by "Exhibit A."

In this state of the case, the defendant's offer was to prove that before the Constitution and By-Laws (Exhibit B,) had any existence, he applied to the Insurance Company for an insurance on the life of John Blair, for his (defendant's) "*special benefit and not otherwise.*" That after some delay, his application was accepted by said Company; that he then, and from time to time thereafter, paid the money which was necessary to perfect and

to continue said special arrangement ; that he continued to do so, until the death of said John Blair ; that upon and after the death of said John Blair, he did, pursuant to such special arrangement, demand the money due him thereunder, and sought to be recovered in this suit, as due to him in his own right, and on such demand, received the same in accordance with said special arrangement. He also offered by proof, to explain and contradict the terms of the receipt, (Exhibit D,) and to disprove the representations of the letter of Nones, (Exhibit E,) which had been received in evidence. All this evidence the Court excluded. Upon what ground it was excluded, the appellant could not understand then, and cannot understand now.

The appellant proposed to prove that as a matter of fact, he did make a special agreement with the Insurance Company, that whether that was such a contract as he could legally have enforced or not, as matter of fact the Insurance Company, which had received the consideration from him, recognized it as a binding obligation, and paid him the money. This was the very gist of the action. The plaintiff sought to recover of the defendant, on the ground of money received by him from the Insurance Company for her use. She could claim of him on no other ground. *Whitehead vs. Howard,* 2 *Brod. & Bing.,* 372, (6 *Eng. C. L.,* 158.)

She had been permitted to introduce evidence to sustain this position. This position the defendant denied, and this evidence he offered to contradict by legal proof; and not merely to contradict by a naked negative, but to prove affirmatively, how and why he claimed and received the money. The facts which he set up, if proved, constituted a complete legal bar to the action, and the witnesses by whom he sought to prove the facts were in all respects competent.

Whether there was or was not a special agreement between the Insurance Company, and the appellant, on

which this money was paid to him, the appellee's claim against the Insurance Company, if she ever had one, was not affected by such payment. If it was paid to him, as he offered to prove, in pursuance of a special agreement; it could not bar her of her claim, if she had one, on her certificate "Exhibit A," and if the payment to the appellant was on the ground of that certificate, it was not a payment that could release the Company from its obligation on that certificate, or embarass her in her demands against the Company. Since no payment by a debtor to a wrong person can release him from his obligation to pay the person entitled thereto. *Tiernan, et al. vs. Rescaniere's Admr's,* 10 *G. & J.,* 225.

The simple fact that the receipt Exhibit D, and the letter Exhibit E, had been admitted in evidence against him, justified the defendant in offering evidence to explain or contradict them, if he was able and desired to do so.

The Court erred in rejecting the prayer offered by the appellant.

In order to entitle the plaintiff to recover, it was necessary for her to prove either that by reason of the death of John Blair, she was entitled to receive from the United States Railroad Conductors' Life Insurance Company, a sum of money which the defendant had collected and obtained—or that in some other way he had received money to her use.

This, granting full force to all the evidence which she had offered, and which had been admitted, she had utterly failed to do. There was no pretense that the appellant had received money for the use of the appellee, from any other source, save the said Insurance Company, and the only evidence as to his receipt of money from said Insurance Company, was that he had received money from it as administrator of John Blair. That was the testimony of Culberston and of Exhibit D, which he

filed to corroborate his answer. Aside from that answer and Exhibit, there was no evidence of the receipt of any money by the defendant in any capacity. This was clearly inadmissible evidence, but when admitted, it only shows that the appellant as administrator of John Blair, received the sum of money specified. That money he must of course account for, as administrator, and its receipt by him in that capacity, gave the plantiff no right to recover in the present action.

*William A. Hammond* and *Samuel Snowden,* for the appellee.

The commission containing the deposition of Joseph T. Culbertson, not having been set out in any of the bills of exception taken in this case, cannot be looked at by this Court, and therefore the matters referred to in the first, second, third fourth and ⅖fifth bills of exception will not be considered. *Burgess vs. State,* 12 *G. & J.,* 64 ; *McTavish vs. Carroll,* 17 *Md.,* 1 ; *Munroe vs. Woodruff,* 17 *Md.,* 159 ; *Bullitt vs. Musgrave,* 3 *Gill,* 31.

The Court will not notice a paper excepted to, unless it appears in the bill of exception, though one like it be inserted in the record by the clerk. *Wright vs. Bk. of Ala.,* 6 *Smedes & Mar.,* 251. A reference in a bill of exception to papers introduced at the trial does not make them a part of the exception. *Wyman vs. Wood,* 12 *Shep.,* 436 ; *Wadlington vs. Gary,* 7 *S. & M.,* 522 ; *Carey vs. Russell,* 3 *Gilm.,* 366. The paper excepted to must be set out *in* the exception, or this Court cannot judge whether its omission is error. *Duvall vs. Peach,* 1 *Gill,* 172.

The first, second, third, fourth and fifth bills of exception taken by the defendant, were really objections to the facts contained in the deposition ; and unless, therefore, the deposition is inserted in the bills of exception, this Court cannot say what the evidence admitted by the Court

below is, and consequently cannot decide upon its admissibility.

But assuming that said exceptions were properly taken, and contain the necessary facts to enable this Court to judge of the admissibility of the testimony objected to, the paper marked Exhibit B was admissible for the purpose of showing what was the contract made by John Blair when he became a member of the Insurance Company, as evidenced by the certificate of membership, and to whom the money collected at his death, should be paid. It is by this paper that the rights of the appellee must be ascertained, for otherwise she could not make out her title to the money which had been without authority collected for her by Samuel S. Blair, and he certainly had notice by the provisions of this paper that the money belonged to his brother's widow, and having received the money collected under its sanction, to be paid to the appellee, he is fixed with notice of her right to the same. *Lefevre vs. Boyle*, 3 *Barn. & Adol.*, 877, (23 *E. C. L.*,) 207 ; *See* 3 *Rob. Prac.*, 4.

The paper marked Exhibit A was also properly admitted by the Court, for it is a link in the evidence, showing the right of the appellee to the money collected by the appellant, and is required to show the fact that John Blair was a member of said Insurance Company.

The part of the answer to the fourth interrogatory was admissible, as showing that Exhibit D came from the proper custody, and also to prove the genuineness of the hand-writing of Nones. Exhibit E was an official paper, written by Nones to the company, and was properly admitted by the Court, for the purpose of showing upon what representations and for whose use the money was paid by the company to the defendant.

The part of the sixth answer, admitted by the Court, was evidence to shew that there was no contract made by John Blair with the company, for the benefit of any

other person, and the only way in which that fact could be shown was by a search among the books, papers, &c., of the company, in its proper office, where such a contract would have been preserved.

Exhibit G was some evidence to shew that the money was collected by the company from its members, for the use of the plaintiff, she being all the *family* left by John Blair ; and that under these notices the amount which had been paid into the hands of the defendant had been collected.

The facts and exhibits referred to in these five bills of exception were circumstances tending to shew the equitable claim of the plaintiff to the money which had been received by the defendant, and that it had been received by him through misrepresentation and fraud, and was therefore, recoverable in the action for money had and received. *Kennedy vs. Balto. Ins. Co.,* 3 *H. & J.,* 367 ; *Penn vs. Flack,* 3 *G. & J.,* 369 ; *Tiernan vs. Rescaniere,* 10 *G. & J.,* 223 ; *Murphey vs. Barron,* 1 *H. & G.* 258 ; *Vrooman vs. McKaig,* 4 *Md.,* 454.

The certificate of membership having been given by the company to John Blair, made him a member of the company, and as soon as he became such member, the rights prescribed by the Constitution attached, and the instant he died, his wife, (the appellee,) became entitled to one dollar from each and every member of the company, to be collected in the mode prescribed by Article 3 of the By-Laws.    The certificate and the Constitution then became the contract between Blair and the company, and after his death between his widow and the company, and being in writing could not be varied, changed or contradicted by the offer of the testimony contained in the sixth bill of exception.    The offer contained facts which, if admitted, would have made another contract than that which John Blair entered into, and would have substituted that contract for the one which the member

(J. Blair) had actually made, which cannot be done. *White vs. Brownell,* 3 *Abb. Pr. R.,* 318, *N. S.; Vrooman vs. McKaig,* 4 *Md.,* 454.

The money which had been paid by the company to the defendant was collected by it from its members, under the terms of its Constitution, and in the hands of the company was trust money paid to it by its members for the parties entitled to it, by the terms of its Constitution, and it being paid to the defendant by the company, he simply became a trustee in the place of the company, and held the money for the use of the plaintiff, and he could not escape the liability conferred upon him by the relation, thus created, by showing a contract different from that under which the money was collected. The offer in the seventh bill of exception, went a little farther than the offer in the sixth, and wished to change the terms of the receipt which he had given for the money, but this was immaterial to the issue in the case. He knew the money belonged to his brother's widow, and he could only receive it as trustee for her, because the company would only pay it for that purpose.

The prayer offered by the defendant was too general, and, therefore, properly refused by the Court below. *Casey vs. Suter,* 36 *Md.,* 1; *Lannay's Lessee vs. Wilson,* 30 *Md.,* 536; *Sheppard vs. Willis,* 28 *Md.,* 631; *Hatton vs. McClish,* 6 *Md.,* 407; *Penn vs. Flack,* 3 *G. & J.,* 369.

STEWART, J., delivered the opinion of the Court.

There is not that precise and specific statement and embodiment of the testimony in the bills of exception, usual, but as the commission containing the deposition of the witness Culbertson, with the accompanying exhibits appears in the record; and there is no averment that they are not the same referred to in the exception; we think there is a sufficient identification of the evidence to support the exceptions.

It would be rather too technical a proceeding to refuse the review of the first, second, third, fourth, fifth and seventh exceptions, for the reasons assigned by the appellee's counsel under such circumstances.

These exceptions, as also the letter, may be considered together, and we find no error in the rulings of the Circuit Court in regard thereto.

Exhibit B being a copy of the Constitution of the Insurance Company, of which John Blair, (as appears by Exhibit A referred to in the second exception,) was a member, was, with Exhibit A, admissible as part of the plaintiff's testimony, to show that she, as the widow of said Blair, was entitled upon his death intestate, to a certain amount of money, according to the terms of the contract between him and the company. Exhibit E, being a letter from Nones, Secretary, addressed to Livingston, then Secretary, and Exhibit D, referred to in the seventh exception and fourth interrogatory to Culbertson, the witness, purporting to be the receipt for money, executed by the appellant, were admissible to show in what way the money came to be paid to the appellant.

This testimony was explanatory of the transaction, and was not irrelevant, nor obnoxious to the rule of *inter alios*, and the appellant had no right to have it excluded.

The testimony objected to in the fourth exception, being part of the answer of Culbertson to the sixth interrogatory, (who, it appears was the Grand Secretary and Treasurer of the Conductors' Life Insurance Company, and the custodian of all the records and proceedings,) was admissible, to show there was no other contract with the Company except that furnished by Exhibit A. In the absence of any evidence to prove any other contract, this testimony was unnecessary ; but we do not see in what way the appellant could be prejudiced thereby. There was no error in the ruling in this exception.

Blair *vs.* Blair.

Exhibit G, referred to in the fifth exception purported to be the letter of the President of the Insurance Company, and was properly admitted, for the purpose of showing the measures taken to raise the money upon the death of John Blair.

It was incumbent on the plaintiff in this action, to show by any relevant testimony, the foundation and character of her claim to the money, accruing under the contract with her husband John Blair, and the Insurance Company.

It was necessary to prove the nature of the contract between these parties, showing that upon his death without will, she, as the widow, became entitled to the money. This was not within the rule of *res inter alios acta*, but indispensible to the establishment of her demand. The plaintiff was obliged further to show that the defendant received the money belonging of right to her. This letter, G, is an acknowledgment of the Company that Blair was dead, and that the money must be raised for his family, in this case by the terms of the Association, where there was no will, for the benefit of his widow.

The plaintiff's action is one for money had and received, and under it she was entitled to recover from the defendant any money belonging to her, obtained by him through mistake, misunderstanding, fraud or deceit, on his part; and if without her authority, or consent, he had received the money due to her, she could recover it in this form of action; and the defendant under the general issue could rely upon any just ground of defence, with scarcely an exception, that would show that he was not *ex æquo et bono* bound to pay the money to the plaintiff. *Murphey vs. Barron*, 1 *H. & G.*, 265; *Kennedy vs. Insurance Co.*, 3 *H. & J.*, 370.

If John Blair, the husband of the plaintiff, was, in his lifetime, a member of the Insurance Company, and the

Blair *vs.* Blair.

certificate affords any evidence of that fact, upon his death, intestate, his widow became entitled to $1 from each member ; and if the money was collected and paid over to the defendant, representing himself as the administrator of John Blair, when in fact he was not; or upon any other representation, he is bound in this action to pay it over to her, unless he can offer some valid defence, showing that in good conscience he is to be excused from doing so. This was proof of a circumstance going to establish the justice of her claim, and there was no error in admitting the testimony objected to in the fifth exception.

If the defendant had been allowed to introduce all the proof he tendered in the sixth and seventh exceptions, it would not have established a sufficient defence to the claim of the plaintiff, in the absence of further proof, to show that Nones was authorized by the Insurance Company to make the arrangement with the defendant, contained in the offer; and unless further followed up by showing that the amount mentioned in the receipt of the defendant was paid, by the individual members of the Company, for the purpose of being paid to the defendant under the alleged arrangement.

The Court committed no error in rejecting the proposed testimony, in these exceptions. The defendant's prayer in the eighth exception, was too general, and properly refused. *Hatton vs. McClish,* 6 *Md.,* 407 ; *Casey vs. Suter,* 36 *Md.,* 1.

*Judgment affirmed.*

(Decided 20th February, 1874.)