J. KEMP BARTLETT, Jr., ET AL., RECEIVERS, *v.*
BEVERLY W. SMITH ET AL., EXECUTORS.

[No. 61, January Term, 1932.]

*Decided April 28th, 1932.*

479

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*John Henry Skeen* and *Reuben Oppenheimer,* with whom were *Emory, Beeuwkes, Skeen & Oppenheimer,* and *Brune, Parker, Carey & Gans,* on the brief, for the appellants.

*Joseph C. France* and *W. Conwell Smith,* for the appellees.

Adkins, J., delivered the opinion of the Court.

This appeal is from the judgment for costs in favor of the defendants on the demurrer to the amended declaration.

The plaintiffs are the ancillary receivers of the First National Company, a corporation incorporated under the laws of the State of Delaware, and the defendants are the executors of a deceased stockholder of said company.

The suit is in *assumpsit* for dividends alleged to have been illegally paid to the defendants' decedent. The first count of the declaration alleges that on or about the 1st day of October, 1927, the said company illegally paid to the defendants' decedent, a stockholder of said corporation, as an alleged dividend, the sum of $35.35; that the said alleged dividend was not paid out of earnings of the corporation but out of the capital of said corporation to the impairment thereof; that the payment of the said alleged dividend was unlawful and in violation of the statutes of the State of Delaware; that certain of the creditors of said corporation in existence at the time of the appointment of receivers were creditors thereof when the said alleged dividend was paid and still are creditors, and that the creditors of said corporation were damaged by such payment; that the said company has assets far insufficient to pay the claims of its general creditors, the amount of the deficiency exceeding the amount of all dividends legally paid by the company to all its stockholders; that the plaintiffs are duly acting as ancillary receivers for said corporation and have been duly authorized by an order of court to institute this suit; that demand has

been duly made upon the defendants for repayment of said sums so illegally paid, but that the defendants have unlawfully neglected and refused to pay the same.

Five other counts allege the payment to defendants' decedent of like amounts on January 1st, 1928, April 1st, 1928, July 1st, 1928, October 1st, 1928, and January 1st, 1929, respectively, and contain the same allegations as set out in the first count, except that in each of said five counts it is alleged that at the time of the payment of the alleged dividend the corporation was insolvent and its assets were less than its liabilities.

The grounds of the demurrer are:

(1) That the declaration does not state a good cause of action against the defendants.

(2) That it is bad in substance and insufficient in law.

(3) That the defendants cannot tell whether it is the purpose of the declaration to state a cause of action in contract or in tort.

(4) That under sections 34 and 35 of the Delaware Corporation Law (Rev. Code, 1915, secs. 1948, 1949, as amended by Acts Gen. Assem. March 2nd, 1927 [35 Del. Laws, ch. 85, secs. 16, 17]) the receivers are given a statutory right of action against the directors of the company to recover dividends illegally declared and paid, and that such right of action, if pursued against the directors would result in the recovery from said directors of such dividends in full, thus exonerating the stockholders; that the declaration does not allege that any effort has been made to enforce any statutory remedy against the officers and directors of the company; that the moneys sought to be recovered in this action are not recoverable from the stockholders who received them innocently, believing the dividends to have been declared and paid out of profits, unless and until the statutory remedy against the officers and directors who are guilty of the wrong, has been exhausted.

(5) That by the provisions of section 49 of the Delaware Corporation Law (Rev. Code Del. 1915, sec. 1963) it is required that any liability against the officers, directors or

stockholders of any Delaware corporation under the provisions of such law shall be enforced by an action on the case, or by bill in chancery; that, if the declaration be construed to be an action in tort, there is an improper joinder of claims; that the declaration fails to allege any complicity in the wrongs on the part of the defendants.

(6) That the first count does not allege that the corporation was insolvent at the time when the dividend therein referred to was paid.

We do not find any substance in the third ground. The declaration clearly sets out an action in *assumpsit* for money had and received.

The important questions are: Can an innocent stockholder be required to refund dividends, seemingly declared in regular course of business out of profits, but actually declared and paid out of capital (1) when the corporation was not insolvent at the time the dividends were paid, but subsequently became insolvent? (2) when the corporation was insolvent at the time the dividends were paid?

The first question has been answered in the negative by the Supreme Court of the United States (*McDonald, Receiver, v. Williams,* 174 U. S. 397, 19 S. Ct. 743, 43 L. Ed. 1022) and by the federal courts generally. See *Wood v. National City Bank* (C. C. A.), 24 Fed. (2nd) 661. These courts have repudiated the trust fund doctrine as applied to capital stock.

There is substantial authority on the other side in jurisdictions other than federal. As illustrations, see *Williams v. Boice,* 38 N. J. Eq. 364; *Mills v. Hendershot,* 70 N. J. Eq. 258, 265, 62 A. 542 (cited with approval in *Day v. U. S.,* 96 N. J. Eq. 736, 740, 126 A. 302); *Cottrell v. Albany Card & Paper Co.,* 142 App. Div. 148, 126 N. Y. S. 1070 (cited with approval in *Small v. Sullivan,* 245 N. Y. 343, 350, 157 N. E. 261); *Mackall v. Pocock,* 136 Minn. 8, 161 N. W. 228; *Minnesota Thresher Mfg. Co. v. Langdon,* 44 Minn. 37, 46 N. W. 310; *Detroit Trust Co. v. Goodrich,* 175 Mich. 168, 141 N. W. 882; 2 *Cook on Corporations* (8th Ed.), sec. 548. Some of these decisions are under statutes; and some

are in jurisdictions which do not accept the trust fund doctrine; and in one or more of them the stockholders were not innocent. Such cases are cited not for their conclusion, but for the argument. So far as we are advised this is a pioneer case in this state as to the specific questions involved.

The first question concerns the first count of the declaration, and the second the remaining five counts. On the former argument we held that the demurrer should have been overruled as to all the counts.

As to the first question we were then of the opinion that in *Crawford v. Rohrer,* 59 Md. 604, and *Maryland Trust Co. v. National Mechanics' Bank,* 102 Md. 608, 63 A. 70, this court had definitely recognized the trust fund doctrine as applicable to capital stock. Our attention was not then called to *Fear v. Bartlett, Trustee,* 81 Md. 435, 32 A. 322, in which it was said that the trust fund doctrine has no application to solvent corporations. The question now under consideration was not directly involved in any of those cases, and the corporation laws of the state have since been revised, and many restrictions removed. We are satisfied on reargument that there are no binding precedents.

In this situation we are disposed to follow the federal decisions as being more in accord with modern conditions and with the realities of life. In these days stocks of corporations are so widely held that it would be practically impossible for stockholders generally to know whether or not each semi-annual dividend paid in regular course was earned. Whatever their position may be theoretically, practically they are in no better position than creditors to know the condition of the company, and it would be an unfair and unreasonable burden to require them to pay back, years after they have been spent, dividends received in good faith from a solvent corporation in regular course of business.

We hold that on the first, second, and sixth grounds assigned the first count of the declaration is bad.

As to the second question, which concerns all the counts except the first, there is but little conflict in the authorities. It is generally held that dividends paid when the corporation

was insolvent may be recovered for the benefit of creditors. As illustrations: *Powers v. Heggie,* 268 Mass. 233, 167 N. E. 314; *Williams v. Boice, supra; Detroit Trust Co. v. Goodrich, supra; Fricke v. Angemeier,* 53 Ind. App. 140, 101 N. E. 329; *Minnesota Thresher Mfg. Co. v. Langdon, supra; Mackall v. Pocock, supra; Wood v. National City Bank* (C. C. A.), 24 Fed. (2nd) 661; 2 *Cook on Corporations* (8th Ed.), sec. 548; 6 *Fletcher, Cyclopedia Corporations,* secs. 33, 37.

A sufficient and satisfactory ground is that money so paid after insolvency was taken from a fund held in trust for creditors and did not belong to the corporation; and it could give no title in the money it paid to one who did not receive it *bona fide* and for value. *Fear v. Bartlett,* 81 Md. 435, 32 A. 322; *Fogg v. Blair,* 133 U. S. 534, 541, 10 S. Ct. 338, 33 L. Ed. 721; *McDonald v. Williams,* 174 U. S. 397, 404, 19 S. Ct. 743, 43 L. Ed. 1022.

The fourth ground of demurrer is well answered in *Powers v. Heggie, supra:* "If it is assumed * * * that judicial notice is taken of the laws of Delaware, the statutory liability of the directors does not exonerate the defendant who has received dividends from liability to repay them for the benefit of the creditors. The 'statute does not transfer the liability from the stockholders to the directors, but it creates a liability on the part of the latter in favor of the corporation or the creditors in certain events. * * * But that provision does not, either in terms or by implication, exonerate the stockholders. * * * The remedy given by the statute is cumulative. The Legislature does not say that the stockholders shall be at liberty to keep the money, and that the creditors must have recourse to the directors alone,' " citing numerous authorities.

It is needless to add that courts in Maryland do not take judicial notice of the statutes of other states. 2 *Poe, Pl. & Pr.,* sec. 272; *Mandru v. Ashby,* 108 Md. 695, 71 A. 312; *Goldsborough v. Tinsley,* 138 Md. 411, 113 A. 861.

What we have said in reference to the fourth ground applies also to the fifth. It may be added that the remedy

granted by section 49 of the Delaware statute, as quoted in appellees' brief, has no reference to claims for dividends illegally paid, so far as stockholders are concerned, as no stockholders' liability is provided by the statute. We do not mean to hold that, if the Delaware statute were as contended by appellees, and were in evidence, the law of the forum would not prevail in this case. *Mandru v. Ashby, supra; Powers v. Heggie, supra.* It is not necessary here to decide that question.

On the question of jurisdiction in cases of this sort, apart from statutory provisions, there is much diversity of authority. In 2 *Cook on Corporations* (8th Ed.), sec. 349, it is said the more general practice is to proceed by bill in equity. In 6 *Fletcher, Cyclopedia, Corporations,* sec. 3739, it is said that equity has jurisdiction in such cases, "and, as a rule such dividends may also be recovered in an action at law," citing a number of cases, "although there are holdings to the effect that the remedy in equity is exclusive, and that an action at law will not lie," citing two early Massachusetts cases, a New Jersey, an Alabama, and an Oregon case; also *Lawrence v. Greenup* (C. C. A.) 97 Fed. 906.

In 1 *Poe, Pl. & Pr.,* sec. 117, it is said that the count for money had and received "is commonly said to be equally remedial with a bill in equity, and, in general terms, lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain * * * and the gist of the action is, that upon the circumstances of the case, the defendant ought by the ties of natural justice and equity to refund the money"— citing *Murphey v. Barron,* 1 H. & G. 258; *Boyce v. Wilson,* 32 Md. 122; *National Mechanics' Bank v. National Bank of Baltimore,* 36 Md. 5; *Blair v. Blair,* 39 Md. 556; *Mills v. Bailey,* 88 Md. 321, 41 A. 780; *Vrooman v. McKaig,* 4 Md. 450; *O'Neal v. Board of School Commissioners,* 27 Md. 227.

In view of the nature of this action and the decisions in this state as to its wide applicability, we see no reason why it is not available in this case. We think there is concurrent jurisdiction.

It is strongly urged by appellees that the large number of claims for dividends improperly paid should be adjusted in the receivership case, where questions of contribution and other equities could be adjusted, and multiplicity of suits avoided. It may be that a court of equity would have been a more appropriate and convenient tribunal, but it does not follow that a court of law is without jurisdiction. The allegation in each of the counts of the declaration that "the said company has assets far insufficient to pay the claims of its general creditors, the amount of the deficiency exceeding the amount of all dividends illegally paid by the company to all its stockholders," would seem to eliminate the question of contribution. But if that question should arise, the defendant would have his remedy against the other stockholders. A plaintiff may proceed in equity to avoid multiplicity of suits where equity would otherwise not have jurisdiction, but he is not obliged to.

Our conclusion is that all the counts in the declaration except the first are good. As the demurrer was a general demurrer, it should have been overruled.

This opinion and order will be substituted for those filed on December 29th, 1931.

*Judgment reversed, and case remanded, with costs.*

———

PARKE, J., filed a dissenting opinion as follows:

The authorities are not in accord, and no attempt to discuss them will be made, but the major grounds of dissent should be stated. If a corporation either be insolvent and a dividend be declared and paid out of capital, or be made insolvent by the declaration and payment of a dividend out of its capital, and the corporation shall, upon either contingency, continue thus insolvent, there can be no doubt that the creditors existing at the time of the declaration and payment of the dividend have a right of recovery against the stockholders, who have been paid the dividend, on the plain and clear principle that creditors must be paid before capital

may be distributed among stockholders to the resultant prejudice of existing creditors. There is no basis in law or equity to support a stockholder's retention of an unearned dividend which has been paid to the depletion of the corporate capital. In these circumstances, the dividend is a gratuity. The right to have such a dividend returned is clearly demanded by considerations of public policy, which is at once concerned with the maintenance of an equivalence between corporate capital as represented and as possessed, and with a conformity in corporate management to the rules of rectitude normally governing a reasonable and upright man in a business transaction.

A party to a prospective or subsisting contractual or other relation with the corporation may be held charged with the financial risks and losses incident to its commercial affairs, since these are to be anticipated, and may occur without wilful diminution or any imputation of bad faith, but this is not so with corporate dishonesty, or division of capital of a going concern, because this is an abnormal happening, and the law proceeds upon the theory that usually the individual or corporate person acts honestly, and therefore will not make a wilful and unlawful withdrawal of the capital dedicated to the carrying on of the business.

It is therefore not upon the ground that the capital and assets of a corporation constitute a trust fund for the benefit of creditors that the capital and assets cannot be distributed among its stockholders or appropriated to their benefit, if creditors are thereby left unpaid. The true ground is that, if while insolvent, or if thereby made insolvent, a distribution of the assets among the stockholders is made, leaving corporate creditors unpaid, a fraud is perpetrated upon the subsisting creditors (*McDonald v. Williams*, 174 U. S. 397, 19 S. Ct. 743, 43 L. Ed. 1022; *Fear v. Bartlett, Trustee*, 81 Md. 435, 32 A. 322; *Holt v. State Roads Commn.*, 124 Md. 66, 73, 74, 91 A. 874), but not upon future creditors, unless actual fraud against the latter is intended. *Graham v. La Crosse etc. R. Co.*, 102 U. S. 148, 26 L. Ed. 106; *Oakford Realty Co. v. Boarman*, 156 Md. 65, 71, 143 A. 644.

A dividend is the legitimate and normal return upon capital invested by the stockholder, and, if the dividend should be unearned and its payment impair the capital of the corporation, the stockholder would, nevertheless, be receiving his proportionate share of the distributed corporate assets, which, if not made in fraud of subsequent creditors, or if not declared and paid while the corporation was insolvent or thereby made insolvent, neither the creditors of the corporation nor its receiver or trustee or other officer of the court to wind up its affairs would have any basis to compel restitution by the stockholders. The principle that the stockholder, who has received an unearned dividend which has depleted the assets of a corporation, must refund upon a liquidation of the corporate affairs, has therefore no application, unless a subsisting creditor be injured. The doctrine is equitable in nature, and is reasonable and necessary to the protection of the creditors of an insolvent corporation who have dealt with it in reliance on its capital being unimpaired, but should not extend beyond conditions which the doctrine was formulated to relieve. The principle has its closest analogy in those embodied in Statute of 13th Elizabeth; and does not, it is submitted, validly rest upon the arbitrary conception that the capital assets of a corporation constitute the corpus of a trust for the benefit of corporate creditors. *Supra.*

2. Where there is a right of recovery of an unearned dividend which was paid while the company was insolvent, or thereby so made, the remedy is in equity. The liability to restore rests on fraud. Insolvency at the time of the dividend is a primary element in the right to sue, and is a question which usually requires an accounting for its determination. The right to restitution involves the rescission of the declaration of the dividend, and the power to enforce this right comes from equity creating, in favor of all existing creditors of an insolvent corporation, a lien or charge on the money passing as dividend into the hands of the stockholder. No privity of contract exists between the creditors of the corporation and the stockholder of the corporation. Nor was

the illegal declaration and payment of the dividend by the corporation the wrongful or fraudulent act of the innocent individual stockholder, who merely received, as the result of the corporate act of a distinct legal entity, a due proportion of its apparent net earnings. The right of the creditor to have restitution made is a right which he possesses in common with all other creditors in a similar situation, and this liability of the stockholder to refund is not confined to one shareholder, but to all who have received their respective portions of the dividend. Equity grants, *ex æquo et bono*, that the shareholder refund, but the refunding is for the benefit of all and not of one, and should not be in excess of an amount which, in conjunction with ratable amounts collectable from other shareholders similarly liable, would be necessary to meet any deficiency of assets to discharge the just demands of the creditors affected.

Without a suit on behalf of all of the class of creditors damnified and against all the participating stockholders, except such as should be shown to be not united because impracticable, impossible, or for some other sufficient cause, no jurisdiction, except that of equity, would be capable of determining the rights and liabilities of the various parties with full and complete justice, and of moulding its relief according to the exigencies of the questions for adjudication and the rights and liabilities to be enforced. The rights and the procedure grow out of equitable principles, and are the heads of equitable jurisprudence. To follow a dividend into the hands of a stockholder and to compel its restitution to the extent of the capital so appropriated, in order to enforce the superior equity of an existing creditor, is a right and remedy of equitable origin, and has no comparable counterpart in law. In addition, equity permits the recovery in a single suit of the several obligations of all the shareholders, and thus avoids a multiplicity of actions. Furthermore, a foreign corporation engaged in business in Maryland is made subject to our statutes with respect to procedural matters. Code, art. 23, secs. 117, 345. On principle, an action at law for money had and received would not seem to lie.

The illegal dividend was not originally received by the shareholder to the use of the corporation. Nor did it belong, at the time of the action, to the corporation, and not to the shareholder in his own right. The corporation then was in the course of liquidation, and in no forum was the dividend paid recoverable by the corporation in the course of the conversion and distribution of its assets among its creditors, except upon the dividend being set aside on the ground of its illegality and of the existence of the facts giving rise to an equity in a particular class of the general creditors. The enforcement of this equitable lien or charge is a matter of equitable origin and cognizance, and, when a corporation is in course of liquidation in equity, the duty to make restitution is not a primary but a secondary liability of the shareholder. The majority opinion holds that jurisdictions of law and equity are concurrent, but, in the absence of a statute, an observance of the fundamental difference of law and equity would seem to indicate that the proceedings should be confined to equity.

DIGGES, J., also dissents.